**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICK LaCROSS; ROBERT LIRA; MATTHEW LOFTON, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

v.

KNIGHT TRANSPORTATION INC., an Arizona Corporation; KNIGHT TRUCK AND TRAILER SALES, LLC, an Arizona Limited Liability Company,

*Defendants-Appellants*.

No. 14-56780

D.C. No.
5:14-cv-00771-
JGB-JC

OPINION

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted
December 8, 2014—Pasadena, California

Filed January 8, 2015

Before: Susan P. Graber, Ronald M. Gould,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

**Class Action Fairness Act / Amount in Controversy**

The panel reversed the district court's judgment remanding the putative class action to state court, and held that the defendants Knight Transportation, Inc., and Knight Truck and Trailer Sales had shown that they were entitled under the Class Action Fairness Act to proceed in federal court because they had established the requisite $5 million amount in controversy.

The plaintiff putative class of truck drivers alleged that Knight misclassified them as independent contractors and asserted other labor law violations, and filed their action in California state court.  Knight removed the case to federal court and estimated the amount in controversy for reimbursing the drivers' lease-related and fuel costs to be at least $44 million

In *Ibarra v. Manheim Investments, Inc.*, __ F.3d __. No. 14-56779 (9th Cir. Jan. 8, 2015), filed simultaneously with this opinion, the panel held that when a defendant relies on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeded $5 million, the chain of reasoning and its underlying assumptions must be reasonable.

The panel applied the framework of analysis in *Ibarra* to defendants' proof, and concluded that defendants had met

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

their burden of proof because defendants relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeded $5 million.

### COUNSEL

Richard H. Rahm (argued), James E. Hart, Carly Nese, and Thomas J. Whiteside, Littler Mendelson, P.C., San Francisco, California, for Defendants-Appellants.

James M. Trush (argued), Trush Law Office, Costa Mesa, California; Ellen R. Serbin, Todd H. Harrison, and Brennan S. Kahn, Perona, Langer, Beck, Serbin, Mendoza & Harrison, APC, Long Beach, California, for Plaintiffs-Appellees.

### OPINION

GOULD, Circuit Judge:

With this appeal pending, we decided *Ibarra v. Manheim Investments, Inc.*, __F.3d__, No. 14-56779 (9th Cir. Jan. 8, 2015), filed simultaneously with this opinion, and addressed what proof a defendant seeking removal must produce to prove the amount in controversy requirement under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), when the complaint does not include a facially apparent amount in controversy or may have understated the true amount in controversy. We held in *Ibarra* that when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, the chain of reasoning and its underlying

assumptions must be reasonable. *Ibarra*, __F.3d. at __, slip op. at 12. We apply our framework of analysis in *Ibarra* to defendants' proof here and conclude that because defendants relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeds $5 million, defendants have met their burden of proof. We reverse the district court's judgment and remand for further proceedings consistent with this opinion. Defendants have shown that they are entitled under CAFA to proceed in federal court.

# I

Defendants Knight Transportation, Inc., and Knight Truck and Trailer Sales, LLC (collectively, "Knight"), are Arizona corporations licensed to do business in California. The named plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton are truck drivers or "Owner Operators" who performed work for Knight. Plaintiffs filed a putative class action against Knight in California state court, alleging that Knight misclassified them as independent contractors and asserting other labor law violations.

Knight removed the case to federal court and estimated the amount in controversy for reimbursing the drivers' lease-related and fuel costs to be at least $44 million. The lease-related and fuel costs are at stake because if plaintiffs prevail on their claim that they are employees, Knight will be liable for its employees' expenditures related to the ownership and operation of the trucks. *See* Cal. Lab. Code § 2802. Plaintiffs filed a motion to remand the class action to state court. The district court granted plaintiffs' motion and remanded the case to state court, concluding that Knight did not meet its burden of proof to establish the amount in controversy

because all of Knight's calculations relied on a flawed assumption that all drivers worked 50 weeks a year.[1] On July 31, 2014, Knight petitioned for permission to appeal, which we granted on November 10, 2014.[2]

## II

The sole dispute here is whether CAFA's requirement that the amount in controversy exceed $5 million is met. In *Ibarra*, we adhered to the rule that the defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied. *Ibarra*, __F.3d at __, slip op. at 8. As the Supreme Court has held, a removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Basin Operating Co. v. Owens*, No. 13-719, 2014 WL 7010692, at \*6 (U.S. Dec. 15,

---

[1] The district court found that Knight's assumption was contradicted by its own evidence of actual fuel costs. For example, plaintiff LaCross was counted as a class member for one year but he only paid fuel costs for 18 weeks.

[2] Our November 10, 2014 order granting Knight's petition for permission to appeal contains a typographical error where it states that "we find that the petition for permission to appeal was timely filed on July 21, 2014." Knight's petition for permission to appeal was filed on July 31, 2014.

Plaintiffs contend that the district court's remand order was entered on July 18, 2014, so Knight's petition for permission to appeal was untimely filed on July 31, 2014. Although the district court's remand order was filed on July 18, 2014, the order was entered on July 21, 2014. Knight's petition for permission to appeal was timely filed. 28 U.S.C. § 1453(c)(1).

2014).  When, as here, "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at \*5.  As we further held in *Ibarra*, when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones.  *Ibarra*, __F.3d. at __, slip op. at 12.

We apply our framework of analysis in *Ibarra* to Knight's evidence but start by noting an important distinction in the complaints.  Unlike the complaint in *Ibarra*, which alleged a "pattern and practice" of labor law violations but not universal violations, the complaint here clearly defined the class to include only the truck drivers, all of whom allegedly should have been classified as employees rather than as independent contractors.  As our first source of reference in determining the amount in controversy, plaintiffs' complaint claimed that the truck drivers, as employees, should be reimbursed for their business expenses.  *See St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938) (directing courts to first look to the complaint in determining the amount in controversy).  Were plaintiffs to succeed on their claim that they are employees, Knight will need to reimburse them for expenditures related to the ownership and operation of their trucks, including lease-related costs and fuel costs.  *See* Cal. Lab. Code § 2802; *see also Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam) (upholding the underlying assumption that when all members of the putative class are alleged to have been misclassified, the consequences of misclassification apply to all of them).

Knight calculated its potential liability for the drivers' fuel costs as follows. Knight provides its drivers with fuel cards to pay for fuel at a discount. The drivers are not required to use the cards, so the fuel costs invoiced on Knight's fuel cards may be less than the actual fuel costs. The total fuel costs invoiced on Knight's fuel cards in the first quarter of 2014 were $2,369,628. Knight contends that if we multiply the quarterly fuel costs of $2.3 million by 16 quarters in the four-year class period, the amount in controversy would be $36.8 million.

Knight further extrapolated a more conservative estimate of total fuel costs by taking into account that the number of drivers varied each year. For example, there were 116 drivers in 2010 as opposed to 207 drivers in 2014, so a more accurate calculation of the fuel costs in each quarter of 2010 should be $1,327,907 ($2,369,628 x 116/207). Knight's number of drivers was the lowest in 2010, and even using the lowest number of drivers in 2010 for all 16 quarters during the relevant class period, the total estimated fuel costs would be $21 million ($1,327,907 x 16 quarters).

The district court erred in concluding that "all of Knights calculations rely on the assumption that . . . the class . . . worked for the entirety of the year." Contrary to the district court's conclusion, the foregoing method of calculation extrapolated fuel costs based on the actual invoiced fuel costs in the first quarter of 2014 and the actual number of drivers who signed the independent contractor agreements with Knight during the relevant class period, without relying on the assumption that each driver worked the entire year.

Reviewing the district court's remand order *de novo*, *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th

Cir. 2006) (per curiam), we conclude that Knight has produced sufficient evidence to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. We also conclude that the chain of reasoning and its underlying assumption to extrapolate fuel costs for the entire class period using the actual invoiced fuel costs of one quarter are reasonable for several reasons. First, the complaint alleges that the class includes only truck drivers, so the fuel costs are necessary expenses in the discharge of the drivers' duties. *See* Cal. Lab. Code § 2802. Second, nothing in the record shows that the drivers worked for another company while working for Knight. Third, while the number of drivers varied during the class period, even using the lowest number of drivers in 2010 for all 16 quarters during the class period, the fuel costs would still exceed $5 million.

At oral argument, plaintiffs contended that the class may not be able to prove all the elements for reimbursement under California Labor Code § 2802, so the amount in controversy likely will not exceed $5 million. Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable. As we explained in *Ibarra*, __F.3d at __, slip op. at 9 n.1:

> Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.

## III

We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**